

**FILED**

**JUN 0 2 2003**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Amir Reza Oveissi

: Civil Action No. 03-_____

Vs.

: Judge _____

Islamic Republic of Iran
Ministry of Foreign Affairs
Khomeini Avenue
United Nations Street
Tehran, Iran

And

The Iranian Ministry of Information and
Security
Pasdaran Avenue
Golestan Yekom
Tehran, Iran

CASE NUMBER 1:03CV01197

JUDGE: Royce C. Lamberth

DECK TYPE: Personal Injury/Malpractice

DATE STAMP: 06/▓▓/2003

## COMPLAINT FOR WRONGFUL DEATH, LOSS OF CONSORTIUM AND SOLARIUM, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, CONVERSION, LOST EARNINGS AND LOST PROFITS, FOR PRE-JUDGMENT ATTACHMENT OF PROPERTY AND FOR PUNITIVE DAMAGES

### A. JURISDICTION.

1. Jurisdiction is founded under 50 U.S.C. 2405, Section 6 (j) of the Export Administration Act of 1979 and under 28 U.S.C. Section 1605 (a) (7), and note to the Foreign Sovereign Immunities Act.

### B. VENUE.

2. Venue is proper in this District Court pursuant to 28 U.S.C. Sec. 1391 (f) 4).

1

## B. THE PARTIES.

3. Plaintiff, Amir Reza Oveissi, is and was a United States citizen at all times material to this matter has been and is a domiciliary and resident of Virginia.

4. Defendants, The Islamic Republic of Iran and the Iranian Ministry of Information and Security, at all times material to this matter was and are entities designated by federal statute as state sponsors of terrorism and are not immune to litigation.

## C. FACTS COMMON TO ALL CAUSES OF ACTION.

4. The Defendants' frozen assets are those specifically held by the United States Government to compensate victims of terrorism.

5. Amir Reza Oveissi is the grandson and heir of Gholam Ali Oveissi.

6. Amir Reza Oveissi was born in the United States, is a United States citizen and at all times material to this matter has been a United States citizen.

7. Gholam Ali Oveissi (Gholam) was a prominent figure in the government of the Shah of Iran, who rose to the rank of General of the Army. After the revolution of 1979, the Islamic Republic of Iran began state-sponsored terrorism and engaged in a government-sponsored program of extrajudicial killings of Iranian ex-patriates, principally in Europe.

8. On or about February 17, 1984, agents of the Islamic Republic of Iran shot and killed Gholam as he walked down the Rue de Passy in Paris, France.

9. Out of concern for the high number of terrorist acts in Europe sponsored by the Islamic Republic of Iran, a judicial inquiry was held in Berlin, Germany.

10. These judicial inquiries were for the purpose of establishing the role and responsibility of the Islamic Republic of Iran in the planning and extrajudicial killings of individuals outside of the territory of the Islamic Republic of Iran.

11. The main inquiry was held in Berlin, Germany, wherein the Berlin court rendered a verdict on April 10, 1997, and a list of 264 victims of state sponsored terrorism by the Islamic Republic of Iran.

12. Gholam Ali Oveissi is victim Number 7, killed in 1984 in Paris, France.

13. The Islamic Republic of Iran confiscated Gholam's substantial property holdings in Iran, estimated in the millions of United States dollars, and has deprived Amir of his rightful claims, use and enjoyment of these properties.

14. Gholam was a successful and industrious businessman, capable of substantial earnings and profits, and but for his extrajudicial killing by the Islamic Republic of Iran, he would have made significant profits and earnings which would have gone into his estate. As a result of the terrorist extrajudicial killing by the Islamic Republic of Iran, Gholam lost these profits and earnings and loss of accretion that would have accrue to his estate and his heirs lost their right to inherit this property.

15. Amir is an heir to Gholam and Gholam's estate and a claimant against the Islamic Republic of Iran and claimant to the estate of Gholam Oveissi.

16. As a result of the extrajudicial killing of Gholam, Amir has suffered and will continue to suffer severe emotional distress and mental anguish and loss of solarium.

### D. WRONGFUL DEATH CLAIM.

17. Plaintiff repeats and realleges paragraphs 1-16 and further alleges that by virtue of his birth, Amir is a United States citizen and has been a United States citizen at all times material hereto.

18. Gholam Oveissi was the victim of state sponsored terrorism by virtue of his extrajudicial killing by agents of the Islamic Republic of Iran.

19. The death of Gholam resulted from an extrajudicial killing by agents using the resources of the Islamic Republic of Iran.

20. The Islamic Republic or Iran agents were acting within the scope of their office and agency when they engaged in the extrajudicial killing.

21. The Islamic Republic of Iran has been designated as a state sponsor of terrorism at all times material herein.

22. Similar conduct by United States agents, officials or employees if conducted in the United States would be actionable.

23. Plaintiff has suffered damages as a proximate cause of the wrongful death of Gholam Oveissi in the form of solarium in the amount of $5,000,000US.

### E. LOSS OF CONSORTIUM AND SOLARIUM.

24. Plaintiff repeats and realleges paragraphs 1-23 and further alleges below.

25. Due to the terrorism and death of Gholam Oveissi, Amir Ali Oveissi was deprived of the services, society, company, solarium of his grandfather, and suffered and will suffer severe mental anguish, grief, and injury to his feelings in the amount of $5,000,000US.

### F. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

26. Plaintiff repeats and realleges paragraphs 1-25 and further alleges below.

27. The Islamic Republic of Iran agents knew that if they killed Gholam Oveissi, that his children, grandchildren and other heirs would suffer great emotional distress.

28. With the knowledge of this prospect, the Islamic Republic of Iran agents killed Gholam Oveissi, in Paris, France, on or about February 17, 1984.

29. As a direct and proximate cause of the extrajudicial killing of Gholam Oveissi, Defendant has inflicted severe, permanent emotional distress on Plaintiff in the amount of $5,000,000.US.

### E. CONVERSION.

30. Plaintiff repeats and realleges paragraphs 1-29, and further realleges below.

31. Gholam Oveissi was a successful businessman and property owner with vast assets in the Islamic Republic of Iran, including real estate, farms, personal property and irrigation enterprises.

32. The Islamic Republic of Iran confiscated and converted his property, both real and personal, for its own uses, without compensation.

33. The value of the decedent's property, wrongly converted, is $12,000,000US.

34. Plaintiff has been deprived of his rightful claim to the decedent's property and the accretion thereto as his inheritance.

35. The Islamic Republic of Iran has been unjustly enriched by conversion of Gholam's real and personal property.

36. Plaintiff has suffered damages in the loss of the value of the property, accretion to the value and consequential damages as the proximate cause of defendant's conversion in the amount of $80,730,000.00US.

### F. LOST PROFITS AND LOST EARNINGS.

37. Plaintiff repeats and realleges paragraphs 1-36 and further alleges below.

38. In addition to losing the value of the real and personal property described above, including capital assets, Gholam Oveissi's business enterprises were deprived of making profits on an annual basis.

39. The value of the earnings and the profits from the farm, the irrigation enterprise and other business ventures were lost as the proximate cause of the extrajudicial killing and the conversion of Gholam's real and personal property.

40. The value of earnings and profits lost is $1,000,000.US on an annual basis, multiplied by the remainder of his life expectancy for a sum total of $21,000,000US.

41. Plaintiff has suffered damages as the proximate cause of the extrajudicial killing as measured in lost earnings and lost profits that would have been accretions to the estate of Gholam Oveissi.

42. This extrajudicial killing denied Gholam's estate and the Plaintiff, as an heir to the estate, from asserting claims to the estate.

### G. PUNITIVE DAMAGES.

43. Plaintiff repeats and realleges paragraphs 1-42, and further alleges below.

44. Defendant's acts have been ruled as state sponsored terrorism, are numerous, continuous and unabated.

45. The terrorist acts of September 11, 2001 in New York City and Washington, DC, are *indicia* that state sponsored terrorism has not subsided, but on the contrary, have increased with audacity.

46. Defendant's connections and support of Al Quaeda terrorist activities and the harboring of these terrorist cells and the leadership of terrorist organizations present a clear and present danger to the United States in its war against terrorism.

47. Defendant's continuous, numerous and unabated terrorist activities warrant the President of the United States listing it as a member of the "Axis of Evil".

48. Recent terrorist suicide bombings and attacks in Saudi Arabia and Defendant's connections to the Shiite radical terrorist activities in Iraq present a clear and present danger to the United States and the world of the effects of state sponsored terrorism by the Islamic Republic of Iran that remains unabated for the foreseeable future.

49. Punitive damages must be assessed against the Islamic Republic of Iran in the amount of ten (10) times the actual damages of $111,730,000.00US or $1,117,300,000.00US as notice that they must cease and desist all terrorist activities and that monetary penalties shall be of sufficient magnitude to deter further terrorist acts, such as extrajudicial killings and suicide bombings.

50. Plaintiff has been damaged in the amount of $1,229,030,000.00US.

## H. PRE-JUDGMENT ATTACHMENT.

51. Plaintiff repeats and realleges paragraphs 1-50, and further alleges below.

52. Congress in November, 2002 passed an act that allows victims of state sponsored terrorism to collect on the funds seized, frozen and held in trust for victims of state sponsored terrorism by the Islamic Republic of Iran.

53. The funds held for such purposes are sufficient to cover the claims alleged and which Plaintiff will prove, as case law precedent is clear on at least two counts.

54. The Plaintiff seeks a pre-judgment order for the amount of actual damages suffered by Plaintiff, directed to the appropriate United States agencies, such as the United States Treasury Department and the United States Department of Justice, with the amount of punitive damages to be assessed later, upon judgment.

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFF DEMANDS JUDGMENT AGAINST DEFENDANT** in the amount of One Hundred and Eleven Million, Seven Hundred

and Thirty Thousand Dollars U.S. ($111,730,000.00US), plus One Billion One Hundred and Seventeen Million and Three Hundred Thousand Dollars U.S. ($1,117,300,000.00US) as punitive damages, for a total of One Billion, Two Hundred and Twenty Nine Million and Thirty Thousand Dollars in United States currency ($1,229,030,000.00US) as total damages.

Respectfully submitted,

*[signature]*

Charles Cervantes, DC Bar #238345
5415 North 22nd Street
Arlington, Virginia 22205
Counsel for Plaintiff